**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MOTORISTS MUTUAL INSURANCE COMPANY, | ) ) ) | 2:20-cv-1406-RJC |
| Plaintiff, | ) ) ) | Judge Robert J. Colville |
| vs. | ) ) | |
| HOWARD'S TOWING AND RECOVERY, LLC and HOWARD SZUMINSKY, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is the Motion to Intervene (ECF No. 7) filed by proposed intervenor-defendant The Mosites Company, Inc ("Mosites"). Mosites seeks to intervene as of right in this matter pursuant to Federal Rule of Civil Procedure 24(a)(2), and alternatively seeks permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). Mot. 1, ECF No. 7. Mosites asserts that intervention is appropriate because Mosites is an interested party to this declaratory judgment action commenced by Plaintiff Motorists Mutual Insurance Company ("MMIC"), and further asserts that it seeks intervention to protect its purported rights and interests under the relevant insurance policy at issue in this action. *Id*. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a). Mosites' Motion to Intervene has been fully briefed, and is ripe for disposition.

## I.      Factual Background & Procedural History

This declaratory judgment action seeks a determination as to whether MMIC has any duty to defend or indemnify its named insured, Defendants Howard's Towing and Recovery LLC and

its principal, Howard Szuminsky (collectively, "Howard's Towing"), with respect to a number of underlying lawsuits ("Underlying Lawsuits")[1] pursuant to an insurance policy issued to Howard's Towing by MMIC (Policy No. 33-301012-70E) ( "Policy"), effective December 16, 2016 to December 16, 2017 and renewed effective December 16, 2017 to December 16, 2018.  Compl. ¶ 10, ECF No. 1; Br. in Opp'n 1, ECF No. 10.  Mosites is a co-defendant with Howard's Towing in one of the Underlying Lawsuits, specifically the *Waldron* lawsuit.  *Id.* at 2.  With respect to the claims and allegations set forth in *Waldron*, Mosites explains as follows:

> This is an insurance coverage dispute stemming from the *Waldron* litigation, a class action case concerning Howard's Towing's alleged involuntary towing practices in a large parking area located at the Eastside Shopping Center located on Centre Avenue in Pittsburgh, Pennsylvania.  The plaintiffs in the underlying [*Waldron*] action claim that they parked their vehicles in the large parking area at the Eastside Shopping Center and Howard's Towing removed their vehicles from the parking area and transported them to Howard's Towing's yard located at 60 Irvine Street, Pittsburgh, Pennsylvania.
>
> [The *Waldron*] [p]laintiffs were allegedly injured when Howard's Towing charged them amounts in excess of the reasonable and permissible fees allowed by the City of Pittsburgh.  [The *Waldron*] [p]laintiffs allege that they were damaged as a result of the negligence of a number of defendants, including Mosites.  [The *Waldron*] [p]laintiffs allege that on the dates of the incidents, Mosites managed the Eastside Shopping Center on behalf of the property owners.  Both Mosites and the Eastside Shopping Center property owners are defendants in the *Waldron* litigation.

Br. in Supp. 3, ECF No. 8 (citations omitted).

---

[1] The Underlying Lawsuits are eight lawsuits filed in the Court of Common Pleas of Allegheny County, Pennsylvania: *Mahon v. Howard's, et al.*, GD-18-012021; *Horsley v. Howard's et al.*, GD-18-012027; *Waldron v. Howard's, et al.*, GD-18-012034 ("*Waldron*"); *Markle v. Howard's, et al.*, GD-18-012037; *Knight v. Howard's, et al.*, GD-18-012063; *Jones v. Howard's, et al.*, GD-18-012298; *Cohen v. Howard's, et al.*, GD-18-012332; and *Kozlowski v. Howard's, et al.*, GD-19-017159.  Compl. ¶ 10, ECF No. 1.  The Court notes that each of the seven class action cases (*Kozlowski* was not filed as a class action and the Allegheny County docket indicates that *Kozlowski* was discontinued on October 12, 2020 (*see* Allegheny County Docket Document 29)) was originally assigned to the undersigned in the undersigned's capacity as the "Class Action Judge" in the Civil Division of the Court of Common Pleas of Allegheny County.  The dockets for the class action cases indicate that the undersigned's involvement in the cases was limited to entering orders permitting the filing of amended complaints and orders permitting some of the cases' admission to the "Commerce and Complex Litigation Center," to which class actions are presumptively assigned.  While preliminary objections were filed while the cases were assigned to the undersigned, the cases were reassigned to another judge following the undersigned's transfer to the Criminal Division of the Court of Common Pleas of Allegheny County prior to disposition of the same.

In the Complaint for Declaratory Judgment (ECF No. 1) ("Complaint") filed by MMIC in this matter, MMIC explains that the Underlying Lawsuits involve claims brought against Howard's Towing and various property owners, operators, and/or groups of the same ("Property Defendants"), including Mosites, related to Howard's Towing's purportedly illegal towing practices. Compl. ¶¶ 13, 20, ECF No. 1. Specifically, MMIC explains:

> The Class Action Complaints allege that Howard's [Towing] is "a known hyper-vigilant tow business," engaged by the Property Defendants "to remove vehicles that are left unattended by drivers who park" at premises owned and operated by the Property Defendants, "but who do not patronize its tenants' businesses."

*Id.* at ¶ 20. MMIC further asserts that the Underlying Lawsuits allege that Howard's Towing "patrol[led] private parking lots vigilantly, remove[d] unattended, unauthorized vehicles that [were] parked there without delay, and [held] those vehicles until their owners [paid]" "a fee that substantially exceeds the maximum fees the City of Pittsburgh allows for such non-consensual towing services." *Id.* at ¶¶ 22-23. MMIC avers that Mosites has asserted crossclaims in *Waldron* for common law contribution and indemnity predicated on the conduct that is alleged in the *Waldron* complaint, as well as for contractual indemnity pursuant to two Service Agreements entered into by Howard's Towing and Mosites. *Id.* at ¶ 40.

In the Complaint, MMIC sets forth the relevant terms of the Policy, Compl. ¶¶ 62-67, ECF No. 1, and further alleges that it is presently defending Howard's Towing in the Underlying Lawsuits under a full and complete reservation of rights, *id.* at ¶ 11. MMIC avers that coverage is not available under the Policy with respect the claims asserted in the Underlying Lawsuits for several reasons, specifically:

> (a) lack of a covered "accident" or "occurrence"; (b) lack of "damages" payable because of "bodily injury" or "property damage"; (c) absence of coverage for punitive damages; (d) application of the "Expected or Intended Injury," "Care, Custody or Control," "Loss of Use," "Damage To Impaired Property Or Property Not Physically Injured," and "Knowing Violation of Rights of Another"

> Exclusions; (e) lack of "personal and advertising injury"; (f) lack of "direct and accidental loss or damage" to a customer's auto or loss of use resulting from such "accidental loss and damage"; and (g) lack of an "insured contract."

Br. in Opp'n 2-3, ECF No. 10 (citing Compl. ¶¶ 73-85, ECF No. 1).

MMIC commenced this action by filing the Complaint on September 17, 2020.  Mosites filed its Motion to Intervene, along with a Brief in Support (ECF No. 8), on December 30, 2020. MMIC filed a Response (ECF No. 9) and a Brief in Opposition (ECF No. 10) on January 12, 2021. On January 19, 2021, Howard's Towing filed an Answer (ECF No. 11) to the Complaint.  Mosites filed a Reply (ECF No. 12) with respect its Motion to Intervene on January 19, 2021.  After seeking, and being granted, leave of Court, MMIC filed a Surreply (ECF No. 15) on January 26, 2021.  Mosites filed a Motion for Oral Argument (ECF No. 16) on January 29, 2021, and this Court entered an Order (ECF No. 17) denying the Motion for Oral Argument on February 5, 2021.

## II.     Legal Standard

In considering a motion to intervene, a court "must accept as true the non-conclusory allegations made in support of the motion to intervene." *Palladino v. Corbett*, No. CIV.A. 13-5641, 2014 WL 830046, at *1 (E.D. Pa. Mar. 4, 2014) (citing *Olympic Sports Data Servs., Ltd. v. Maselli*, No. 07–117, 2008 WL 5377626, at *2 (E.D. Pa. Dec. 22, 2008)).  With respect to intervention of right, Federal Rule of Civil Procedure 24 provides:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
>
>> (1) is given an unconditional right to intervene by a federal statute; or
>>
>> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

4

Fed. R. Civ. P. 24(a).  Where a litigant seeks intervention as of right under Rule 24(a)(2), the

United States Court of Appeals for the Third Circuit has held that the litigant must establish:

> 1) a timely application for leave to intervene, 2) a sufficient interest in the
> underlying litigation, 3) a threat that the interest will be impaired or affected by the
> disposition of the underlying action, and 4) that the existing parties to the action do
> not adequately represent the prospective intervenor's interests.

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005) (citing *Kleissler v. United*

*States Forest Service*, 157 F.3d 964, 969 (3d Cir.1998)).  "Each of these requirements must be met

to intervene as of right."  *Treesdale*, 419 F.3d at 220 (quoting *Mountain Top Condominium Assoc.*

*v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir.1995)).

With respect to permissive intervention, Federal Rule of Civil Procedure 24 provides, in

relevant part:

> (b) Permissive Intervention.
>
> > (1) In General.  On timely motion, the court may permit anyone to
> > intervene who:
> >
> > > (A) is given a conditional right to intervene by a
> > > federal statute; or
> > >
> > > (B) has a claim or defense that shares with the main
> > > action a common question of law or fact.
>
> . . . .
>
> > (3) Delay or Prejudice.  In exercising its discretion, the court must
> > consider whether the intervention will unduly delay or prejudice the
> > adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b).

## III.    Discussion

Mosites asserts that its interest in this litigation stems from its status as an "additional

insured" under the Policy, Br. in Supp. 1, ECF No. 8, and MMIC argues that Mosites' claim that

5

it is an "additional insured" is insufficient, "both on its face and as a matter of law," Br. in Opp'n 1, ECF No. 10.   Alternatively, Mosites seeks permissive intervention on the basis that, as an "additional insured," it purportedly has a claim to coverage, i.e. a defense to MMIC's claim that coverage is unavailable under the Policy.   *Id.* at 2; 7.   In arguing that it is an "additional insured," Mosites relies on what it asserts is the "declarations page for the Policy."   Br. in Supp. 3, ECF No. 8.   The documents on which Mosites relies are, in actuality, two "Certificates of Liability Insurance" (ECF No. 8-2) dated December 19, 2016 and December 7, 2017, each of which contains a statement under the section titled "DESCRIPTION OF OPERATIONS/ LOCATIONS/VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)" that provides: "Certificate holder[2] and eastside limited liability company, eastside limited liability company II, eastside II Land Lease, LLC are named as additional insured with a written contract."   Br. in Supp. Ex. B, ECF No. 8-2.

Additionally, Mosites asserts in its Reply that intervention is warranted because: (1) the Certificates of Insurance are ambiguous and should be construed in favor of coverage, Reply 2; 6-7, ECF No. 12; (2) even if Mosites does not constitute an "additional insured" under the Policy, it is nevertheless entitled to coverage as the holder of an "insured contract" and as an indemnitee of Howard's Towing, *id.* at 6; and (3) even if Mosites is not an "additional insured" or covered indemnitee under the Policy, there is a factual issue regarding whether promissory estoppel operates to bar MMIC from contending that Mosites is not covered under the Policy, *id.* at 7-9. Mosites also asserts, in a single sentence and with no substantive explanation, that it is an indispensable party to this action and must be joined to this litigation under Fed. R. Civ. P. 19(a). *Id.* at 9.

---

[2] Mosites is identified in these documents as the "Certificate Holder."   Br. in Supp. Ex. B, ECF No. 8-2.

Mosites further argues that the case law relied upon by MMIC in support of its argument that certificates of insurance such as those at issue in this case cannot alone confer rights or modify insurance policies under Pennsylvania law is inapposite because such case law dealt primarily with motions for summary judgment, and asserts that intervention should be granted in this matter so that discovery as to the "additional insured" status of Mosites can take place before the Court rules on this issue.  *Id.* at 2.  The discovery that Mosites seeks in this matter pertains to:

> Under what circumstances the certificates of insurance were issued by the producer Spodek Rupp Fiore [Rupp-Fiore Insurance] ("Spodek"); what the relationship between Spodek and [MMIC] is; whether there were accompanying notations or other text confirming the certificates by Spodek; and whether MMIC communicated with Spodek, Howard's Towing or Mosites regarding the certificates of insurance and purported coverage.

*Id.* at 5.

MMIC argues that Mosites' purported "additional insured" status under the Policy is "solely predicated" on "standard form Acord Certificates of Insurance, produced by Howard's [Towing's] Agent, Rupp-Fiore Insurance," which contain "standard notice provisions indicating that the Certificates do not confer any rights, do not modify the Policy, and specifically state that in order for Mosites, as the certificate holder, to qualify as an 'additional insured,' the Policy must be endorsed or contain provisions providing 'additional insured' status."  Br. in Opp'n 3, ECF No. 10.  MMIC asserts that Mosites is not named or listed on the Policy as an "additional insured" and that there are no provisions or endorsements pursuant to which Mosites could qualify as an "additional insured" under the Policy.  *Id*. MMIC argues that Mosites fails to set forth a non-conclusory, non-speculative claim that there is any "legal mechanism by which the Policy could be modified to include Mosites as an 'additional insured.'"  Surreply 2, ECF No. 15.  MMIC avers that Mosites' Motion to Intervene should thus be denied because Mosites does not have a legally

cognizable interest, claim, or defense in this matter warranting intervention.  Br. in Opp'n 1, ECF No. 10.

MMIC further argues that certificates of insurance are insufficient to modify a policy by estoppel.  Br. in Opp'n 6-8, ECF No. 10.  MMIC also argues that Mosites' assertion that the Certificates of Liability Insurance are ambiguous, or that the Policy is ambiguous in light of the Certificates, must fail because Mosites advances no reasonable alternative interpretation of either document, as the Certificates of Liability Insurance plainly explain that they are not contracts and do not modify the Policy, and that "additional insured" status would require an endorsement or "additional insured provisions" in the Policy itself.  Surreply 3-4, ECF No. 15.  MMIC argues that, to the extent that Mosites relies on terms in the Policy to argue that coverage is available to Mosites, neither the definition of "Insured Contract" nor the "Insured Contract" Exception to the "Contractual Liability" Exclusion creates coverage for Mosites, and further argues that there is no claim asserted against Mosites to which these provisions would apply.  *Id.* at 4-6.  Finally, MMIC argues that Mosites has no demonstrable interest in this litigation, and that its conclusory assertion that it is an indispensable party under Rule 19 should be rejected.  *Id.* at 6-7.

With respect to intervention as of right, the Court notes that MMIC does not challenge the timeliness of Mosites' Motion to Intervene, and the Court concludes that the Motion to Intervene, which was filed before Howard's Towing had filed its Answer to the Complaint, is timely.  Also, given that Howard's Towing has now filed an Answer in this matter, the Court also summarily rejects any assertion in Mosites' briefing as to a potential finding of default against Howard's Towing, as well as Mosites' speculation respecting Howard's Towing's ability to defend against MMIC's claims in this litigation.  *See* Br. in Supp. 6, ECF No. 8.

Turning to the issue of whether Mosites has a sufficient interest in this litigation and whether that interest may be impaired or affected by this action, the United States Court of Appeals for the Third Circuit has explained that, "[t]o justify intervention as of right, the applicant must have an interest 'relating to the property or transaction which is the subject of the action' that is 'significantly protectable.'" *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)).  In *Treesdale*, 419 F.3d 216, the United States Court of Appeals for the Third Circuit, quoting its decision in *Mountain Top*, 72 F.3d 361, explained:

> While the precise nature of the interest required to intervene as of right has eluded precise and authoritative definition, some general guidelines have emerged. . . . [A]n intervenor's interest must be one that is significantly protectable.  [This means that] the interest must be a legal interest as distinguished from interests of a general and indefinite character.  The applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene.  This interest is recognized as one belonging to or one being owned by the proposed intervenors. . . .  In general, a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene.  Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene. . . .  While a mere economic interest may be insufficient to intervene, an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund.  Thus, when a particular fund is at issue, an applicant claims an interest in the very property that is the subject matter of the suit.

*Treesdale*, 419 F.3d at 220–21 (quoting *Mountain Top*, 72 F.3d at 366).

With respect to interpretation of insurance contracts under Pennsylvania law, the Third Circuit has explained:

> Under Pennsylvania law, courts interpret the meaning of insurance contracts by determining the intent of the parties as expressed by the policy language.  If the language is unambiguous, the express terms of the contract are controlling.  An ambiguous policy term is construed against the insurer.  A contractual provision is ambiguous if it can reasonably be understood to have more than one meaning.  But a court may not strain or distort the language to find an ambiguity where none exists.

*Quincy Mut. Fire Ins. Co. v. Imperium Ins.*, 636 F. App'x 602, 605 (3d Cir. 2016) (footnotes omitted) (citations omitted). "Disagreement regarding interpretation does not make a contract ambiguous." *Quincy Mut. Fire Ins. Co. v. Imperium Ins. Co.*, No. CIV.A. 14-612, 2015 WL 1759146, at *3 (E.D. Pa. Apr. 17, 2015), *aff'd sub nom. Quincy*, 636 F. App'x 602 (citing *Kiewit Eastern Co., Inc. v. L & R Const. Co., Inc.*, 44 F.3d 1194 n. 6 (3d Cir. 1995)).

Initially, while Mosites asserts that the arguments advanced by MMIC in opposition to the Motion to Intervene, specifically that Mosites is not an "additional insured" under the Policy and/or that MMIC cannot be estopped from denying coverage, are defenses to Mosites' assertions of coverage as opposed to a basis for a finding that Mosites does not have an interest in this litigation, Reply 5-6, ECF No. 12, the Court notes that it is Mosites that has the burden of establishing its interest in this litigation. *Treesdale*, 419 F.3d at 220. Mosites' purported status as an "additional insured," as well as its argument that MMIC should be estopped from denying coverage to Mosites because Mosites reasonably relied on the Certificates of Insurance, are arguments Mosites itself relies on in asserting that intervention is appropriate.

The December 19, 2016 Certificate of Liability Insurance contains the following provisions:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.
>
> . . . .
>
> IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. . . .
>
> . . . .

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

Br. in Supp. Ex. B, ECF No. 8-2.  The December 7, 2017 Certificate of Liability Insurance is substantively identical to the December 19, 2016 Certificate, but replaces the language of the sentence beginning with "IMPORTANT" with the following: "IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed." *Id*.  As noted above, the Certificates of Liability Insurance on which Mosites' relies also each contain a statement under the section titled "DESCRIPTION OF OPERATIONS/ LOCATIONS/VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)" that provides: "[Mosites] and eastside limited liability company, eastside limited liability company II, eastside II Land Lease, LLC are named as additional insured with a written contract." *Id*.

To the extent that Mosites asserts that the Certificates of Liability Insurance are the source of their interest in this litigation, the Court finds that any such interest cannot lie in contract. Pursuant to their clear and unambiguous terms, the Certificates of Liability Insurance attached to Mosites' Brief in Support are not insurance contracts and do not modify or amend the Policy. While the Certificates reference a "written contract," Mosites has attached no such contract, and does not otherwise argue that it has achieved "additional insured" status in the manner prescribed in the Certificates of Liability Insurance.

Mosites' attempt to rely on the Certificates' statement that Mosites is "named as additional insured with a written contract" mirrors the situation presented in *Quincy*, 636 F. App'x 602.   In *Quincy*, a party seeking additional insured status also argued that a statement in a certificate of insurance, specifically that "[the purported additional insured] is named as additional insured" under the policy referenced in the certificate of insurance, established such additional insured status.  The Third Circuit explained:

> [Issuer of certificate of insurance] did not have authority to add [purported additional insured] as an additional insured through a certificate of insurance.  The certificate of insurance specifically stated that it was for informational purposes only and did not modify the terms, exclusions, or conditions of the policy.  The statement in the certificate of insurance that [purported additional insured] was an additional insured was without effect.

*Quincy*, 636 F. App'x at 606.  The Third Circuit also cited to 17 Lee R. Russ et al., *Couch on Insurance* § 242:33 (3d ed. 2005) for the following proposition:

> Where an entity requires another to procure insurance naming it an additional insured, that party should not rely on a mere certificate of insurance, but should insist on a copy of the policy.  A certificate of insurance is not part of the policy— if it states that there is coverage but the policy does not, the policy controls.

*Id.* at 606 n.18.  *See also Whitford Land Transfer Co. v. Seneca Ins. Co.*, No. CIV.A. 08-71, 2008 WL 834385, at *4 (E.D. Pa. Mar. 27, 2008) (denying a motion to intervene filed by party claiming additional insured status and explaining "[proposed intervenor/purported additional insured] is not named anywhere in the professional liability policy as an insured, and it has provided no evidence to show that it has any contractual right in regard to the insurance policy between [the insurer] and [the insured].").

In this case, the Certificates of Liability Insurance upon which Mosites relies provide, in pertinent part, that: (1) the Certificates were provided for informational purposes only; (2) they confer no rights to Mosites; (3) they do not affirmatively or negatively amend, extend, or alter the

coverage afforded by the Policy; (4) the Certificates do no constitute contracts between MMIC, the producer (i.e. Spodek Rupp Fiore Insurance), and Mosites; and (5) Mosites could only become an "additional insured" through a Policy provision or endorsement.[3]  Importantly, the Certificates of Liability Insurance could not confer rights to Mosites, were provided for informational purposes only, could not amend the Policy, and do not allow for the creation of a contract between Mosites and either MMIC or Spodek Rupp Fiore Insurance.[4]  In light of these plainly stated and abundantly clear terms, the Court finds that the statement in the Certificates of Liability Insurance under a section titled "DESCRIPTION OF OPERATIONS/ LOCATIONS/VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)" that Mosites is an "additional insured with a written contract" is simply without effect.

Under Pennsylvania law and the Third Circuit's holding in *Quincy*, the Court finds that there is only one reasonable interpretation of the Certificates of Liability Insurance, and that interpretation is that the Certificates of Liability Insurance do not constitute insurance contracts and do not, and cannot, confer "additional insured" status to Mosites.  *See Quincy*, 636 F. App'x at 606 ("The statement in the certificate of insurance that [purported additional insured] was an additional insured was without effect."); *see also id.* ("The district court correctly determined that no reasonable jury could find that [purported additional insured] reasonably relied on the certificate of insurance.  It is unreasonable to rely on a certificate of insurance that explicitly disclaims

---

[3] Again, Mosites does not argue that it achieved "additional insured" status in this manner.  Notably, the July 8, 2017 "Service Agreement" between Mosites and Howard's Towing attached to Mosites' Proposed Answer, Affirmative Defenses, and Counterclaim as Exhibit B acknowledges the endorsement requirement.  *See* ECF No. 12-1 at 42 ("It must specifically state on the Certificate of Insurance that Additional Insured status is afforded to these entities with respect to General Liability, Business Auto and Umbrella / Excess Liability insurance.  *The required Additional Insured Endorsements shall accompany the Certificate of Insurance*." (emphasis added)).  The other "Service Agreements" similarly acknowledge the endorsement requirement.  *See* ECF No. 12-1 at 30; 56.

[4] Accordingly, if the only representation at issue respecting Mosites' "additional insured" status is a statement by Spodek Rupp Fiore Insurance in the Certificate of Insurance, the same clearly cannot create a binding contract between MMIC and Mosites.

conferring any rights." (footnote omitted)).  Accordingly, the Court finds that the terms of the Certificates of Liability Insurance are clear and unambiguous and that they do not render the Policy ambiguous, and the Court further rejects Mosites' assertions of ambiguity.  To the extent that Mosites asserts that the Certificates of Liability Insurance attached to its Brief constitute contracts of insurance between MMIC and Mosites which result in Mosites' purported "additional insured" status or that the Certificates somehow modify or amend the Policy, the Court rejects any such assertion for the reasons discussed above.

Mosites further argues that, even if Mosites is not an "additional insured" under the express terms of the Policy, there is a factual issue regarding whether promissory estoppel operates to bar MMIC from contending that Mosites is not covered as an "additional insured" under the Policy. Because Mosites fails to set forth a promise or representation on the part of MMIC in either its briefing in support of its Motion to Intervene or its Proposed Answer, Affirmative Defenses, and Counterclaim that could possibly support relief under Pennsylvania law, the Court disagrees with Mosites that there exists an issue of fact that should preclude denial of the Motion to Intervene on the basis of Mosites' failure to sufficiently set forth a claim for promissory estoppel at this time. Again, Mosites has the burden of establishing its interest in this litigation, *Treesdale*, 419 F.3d at 220, and has simply not set forth sufficient facts to support an assertion of promissory estoppel in this action with respect to its purported status as an "additional insured."

Under Pennsylvania law, "promissory estoppel is appropriate where '(1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise.'"  *Admiral Ins. Co. v. Liberty Mut. Fire Ins. Co.*, No. CV 18-2492, 2019 WL 3890318, at *6 (E.D. Pa. Aug. 19, 2019), *appeal dismissed sub nom. Admiral Ins.*

*Co v. Liberty Mut. Fire Ins.*, No. 19-3112, 2020 WL 1330691 (3d Cir. Jan. 28, 2020) (quoting *W. Chester Univ. Found. v. MetLife Ins. Co. of Connecticut,* 259 F. Supp. 3d 211, 222 (E.D. Pa. 2017)).  Allegations that a party made "promises and representations" to a plaintiff "generally— without specifying the nature of same, to whom they were made or when—constitute mere legal conclusions which fail to state a plausible claim upon which relief can be granted under a promissory estoppel theory." *Johnson v. Dunkin' Donuts Franchising L.L.C.*, No. CIV.A. 11-1117, 2012 WL 1828028, at *12 (W.D. Pa. May 18, 2012).

"In the insurance context, 'there must be such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon.'" *Nationwide Prop. & Cas. Ins. Co v. Shearer*, 650 F. App'x 115, 117–18 (3d Cir. 2016) (quoting *Titan Indem. Co. v. Cameron*, 2002 WL 242346, at *2 (E.D. Pa. Feb. 19, 2002)).  "Accordingly, an insured must show "(1) an inducement, whether by act, representation, or silence when one ought to speak, that causes one to believe the existence of certain facts; (2) justifiable reliance on that inducement; and (3) prejudice to the one who relies if the inducer is permitted to deny the existence of such facts." *Id.* at 118 (quoting *TIG Ins. Co. v. Tyco Int'l Ltd.*, 919 F.Supp.2d 439, 456-57 (M.D. Pa. 2013)).

The Third Circuit in *Quincy* also addressed a materially similar argument to the one raised by Mosites in this case respecting promissory estoppel, and ultimately held:

> Under both Pennsylvania and New Jersey law, to establish coverage by estoppel, the insured must have reasonably and detrimentally relied on a misstatement by the insurer that coverage existed.  The district court correctly determined that no reasonable jury could find that [purported additional insured] reasonably relied on the certificate of insurance.  It is unreasonable to rely on a certificate of insurance that explicitly disclaims conferring any rights.

*Quincy*, 636 F. App'x at 606 (footnotes omitted).  The Third Circuit also cited three cases for the following propositions:

>*Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex.2006) (per curiam) ("Given the numerous limitations and exclusions that often encumber such policies, those who take such certificates at face value do so at their own risk."); *Ala. Elec. Coop., Inc. v. Bailey's Constr. Co.*, 950 So.2d 280, 286 (Ala.2006) (finding reliance on certificate of insurance unreasonable as a matter of law); *Greater N.Y. Mut. Ins. Co. v. White Knight Restoration, Ltd.*, 7 A.D.3d 292, 776 N.Y.S.2d 257, 258 (2004) (finding, in context of a fraud claim, no reasonable reliance on certificates of insurance "in the face of their disclaimer language").

*Id.* at 606 n.20.

The Court acknowledges that the trial court's decision in *Quincy* was rendered at the summary judgment stage, and is thus distinguishable. As noted above, however, Mosites also has the burden of establishing its interest in this litigation. *Treesdale*, 419 F.3d at 220. The only purported representation raised by Mosites in this case in support of its assertion of promissory estoppel is a statement made by Spodek Rupp Fiore Insurance in the Certificates of Liability Insurance, which explicitly disclaim conferring any rights, regarding Mosites' purported "additional insured" status. Such a representation alone, under the Third Circuit's decision in *Quincy*, simply cannot form the basis of an assertion of justifiable reliance by Mosites. There is no reason to delay a decision to allow for discovery as to the relationship between MMIC and Spodek Rupp Fiore Insurance, and whether the latter could otherwise bind the former outside of the Certificates of Liability Insurance,[5] where the only purported representation at issue was set forth in certificates of insurance such as those at issue in this case.

Mosites further argues that, "[i]f MMIC made representations to any relevant party or took actions (and/or authorized Spodek to do same) that made Mosites believe that it was an additional insured under the Policy, when it was not actually an additional insured, this would detrimentally impact Mosites, and support a promissory estoppel claim." Reply 8, ECF No. 12. Again, outside

---

[5] As noted above, the Certificates of Insurance explicitly provide that the Certificates confer no rights and that Spodek Rupp Fiore Insurance could not bind MMIC by way of the Certificates of Insurance.

of the Certificates of Insurance, Mosites does not identify, in either its briefing in support of its Motion to Intervene or its Proposed Answer, Affirmative Defenses, and Counterclaim, any other representation on which it relied, and cannot credibly argue that discovery is required to identify representations that caused Mosites to believe that it was an "additional insured," as such information would clearly be in Mosites' possession at this juncture.  The failure to identify the nature of such a representation, to whom it was made, or when the representation was made, requires rejection of Mosites' assertion that a claim for promissory estoppel warrants intervention as of right in this matter.  *See Johnson*, 2012 WL 1828028, at *12.

Finally, Mosites also asserts that, even if Mosites does not constitute an "additional insured" under the Policy, it is nevertheless entitled to coverage as the holder of an "insured contract" and as an indemnitee of Howard's Towing.  Reply 6, ECF No. 12.  Essentially, Mosites argues that it is entitled to coverage under the express terms of the Policy even if it is not a named "insured" or "additional insured" under the Policy and even in the absence of the Certificates of Liability Insurance or any other purported promise for coverage.  In its Proposed Answer, Affirmative Defenses, and Counterclaim, Mosites asserts that, pursuant to "Service Agreements" entered into between Howards' Towing and Mosites, Howards' Towing is required to defend and indemnify Mosites.  ECF No. 12-1 at 16, ¶ 103.  Mosites avers that the Policy makes clear "that coverage extends to other parties for which Howard's Towing assumes tort liability pursuant to the terms of an agreement between the parties (i.e. an 'insured contract')," and further avers that the "coverages portion of the [Policy] clearly contemplates MMIC providing a defense to and indemnifying any of Howard's Towing's contractual indemnitees."  *Id.* at 17-18, ¶ 106 (citing Compl. Ex. 24 at 93; 99-100; 105; 142; 154-155, ECF No. 1-24; Compl. Ex. 25 at 93; 99-100;

105; 143; 155-156, ECF No. 1-25).  Mosites asserts that, as an indemnitee of Howard's Towing, it is entitled to coverage under the Policy.  *Id.* at 18, ¶ 107.

MMIC argues that neither the definition of "insured contract" nor the "insured contract" exception to the "contractual liability" exclusion creates coverage for Mosites, and further argues that there is no claim asserted against Mosites to which these provisions would apply.  *Id.* at 4-6. Specifically, MMIC asserts that the "insured contract" exception to the "contractual liability" exclusion only preserves coverage for entities that are otherwise insured under the Policy if "(i) the claim against that insured would be subject to the 'contractual liability' exclusion, but (ii) is predicated on an 'insured contract' – that is, an agreement assuming the tort liability of another." *Id.* at 5.  MMIC argues that "[n]either provision, on its own or in tandem, gives rise to any separate, independent coverage obligation."  *Id.*  MMIC argues that, because Mosites is not entitled to coverage as an "insured" or "additional insured" under the Policy with respect to the claims at issue, "there is no claim for which Mosites qualifies as [an] insured that would be subject to the 'contractual liability' exclusion, but preserved by the 'insured contract' exception."  *Id.*

The Policy contains an "Insuring Agreement" relative to liability coverage in the "Garage Coverage Form," and sets forth a "contractual liability" exclusion, as well as the "insured contract" exception to the same, as follows:

**B. Exclusions**

This insurance does not apply to any of the following:

. . . .

**2. Contractual**

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

> a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement;

> b. That the "insured" would have in the absence of the contract or agreement.

Compl. ¶ 57, ECF No. 1.  The Garage Coverage Form defines "insured contract," in relevant part, as follows:

> That part of any other contract or agreement pertaining to your garage business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement[.]

*Id.* at ¶ 58.[6]

Further, the Policy contains an "Insuring Agreement" in the "Commercial General Liability Coverage Form," which also sets forth a "contractual liability" exclusion, as well as the "insured contract" exception to the same, as follows:

> **2. Exclusions**

> This insurance does not apply to:

> . . . .

> **b. Contractual Liability**

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

> . . . .

> (2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for

---

[6] For the sake of clarity, the Court notes that the words "you" and "your" in the Garage Coverage Form refer to the "Named Insured," i.e. Howard's Towing.  *See* Compl. Ex. 24 at 139, ECF No. 1-24.

the purpose of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

> (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

> (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

Compl. ¶ 60, ECF No. 1.  The Commercial General Liability Coverage Form defines "insured contract," in relevant part, as follows:

> That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

*Id.* at ¶ 61.

The Policy also contains a provision under the section titled "Supplementary Payments" that provides:

> 2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

>> a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

>> b. This insurance applies to such liability assumed by the insured;

>> c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

    (1) Agreed in writing to:

        (a) Cooperate with us in the investigation, settlement or defense of the "suit";

        (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

        (c) Notify any other insurer whose coverage is available to the indemnitee; and

        (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

    (2) Provides us with written authorization to:

        (a) Obtain records and other information related to the "suit"; and

        (b) Conduct and control the defense of the indemnitee in such "suit."

Compl. Ex. 24 at 99-100, ECF No. 1-24.

The issue of whether an insurer is required to provide coverage and/or a defense under materially similar contract provisions (in a case involving similarly situated parties) was addressed by the United States District Court for the Middle District of Pennsylvania in *Penn Nat'l Ins. v. HNI Corp.*, 482 F. Supp. 2d 568, 609 (M.D. Pa. 2007).[7]  In *Penn Nat'l*, a party (Hearth and Home)

---

[7] The Court notes that the district judge in *Penn Nat'l* adopted the magistrate judge's report and recommendation in that matter in its entirety, *Penn Nat'l*, 482 F. Supp. 2d at 580, and the Court's citation to that case herein will primarily look to the analysis set forth in the report and recommendation.

asserted that it was an indemnitee, pursuant to an "insured contract," of a named insured, and argued that it was thus entitled to coverage and a defense under an "insured contract" exception to a "contractual liability" exclusion contained within the named insured's insurance policy. *Penn Nat'l*, 482 F. Supp. 2d at 610.  The *Penn Nat'l* court explained:

> Although the indemnity provision of the Independent Contractor Agreement is an "insured contract," Hearth and Home is, nevertheless, not entitled to coverage and/or a defense under the "insured contract" exception to the contractual liability exclusion in the Policy.  Haldeman, as the named insured, is entitled to coverage and a defense for claims that fall within the "insured contract" exception to the contractual liability exclusion of the Policy.  However unless Hearth and Home is an additional insured under the Policy it is not entitled to coverage and a defense for claims that fall within the "insured contract" exception to the contractual liability exclusion of the Policy.

*Id*. at 609-10.  The *Penn Nat'l* court ultimately held that Hearth and Home was not an additional insured.  *Id.* at 614.  Hearth and Home was thus not entitled to coverage and a defense for claims that fall within the "insured contract" exception to the contractual liability exclusion of the policy at issue in that case.

The *Penn Nat'l* court also independently looked, however, to whether Home and Hearth was entitled to a defense as an indemnitee of the named insured pursuant to another provision, specifically a "provision providing a defense for an indemnitee" that is materially similar to the one provided in the Policy (and quoted above from the Complaint at Compl. Ex. 24 at 99-100, ECF No. 1-24).  *See id.* at 609 ("We conclude that Hearth and Home is not a named additional insured under the Policy.  That conclusion, however, does not end the inquiry as to whether Hearth and Home is entitled to a defense and/or indemnity under the Policy on the basis, as Hearth and Home argues, that it is entitled to coverage under the policy as an indemnitee of Haldeman, that it is an additional insured under the Automatic Additional Insured Endorsement, and that it is entitled to the status of an additional insured under the Unintentional Errors or Omissions provision in the

policy."). The *Penn Nat'l* court ultimately determined that Hearth and Home was not entitled to a defense pursuant to the provision in the policy relating to the defense of an indemnitee because Hearth and Home failed to establish that each condition of the provision had been met in that case. *Id.* at 610-11.

Under the provisions at issue in this case, as in *Penn Nat'l*, it is only an insured that may attempt to rely on the Policy's "insured contract" exception to the "contractual liability" exclusion in situations where, inter alia, the insured has assumed, under an "insured contract," the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. The Court thus agrees with MMIC that, because the Court has found that Mosites fails to set forth a sufficient interest in this case with respect to its purported status as an "additional insured" under the Policy, Mosites also fails to set forth an interest in this litigation in the form of a claim that it may be entitled to indemnity and/or a defense under the "insured contract" exception to the "contractual liability" exclusion. The Court agrees with Mosites, however, that Mosites may have a sufficient, and independent, interest in this litigation as an indemnitee of Howard's Towing pursuant to the provision of the Policy that provides for a defense for an indemnitee,[8] specifically as an indemnitee under the Service Agreements entered into by Howard's Towing and Mosites which contain a provision requiring Howards' Towing to defend and indemnify Mosites.

Because Mosites may constitute an indemnitee of Howard's Towing under potential "insured contracts," i.e. the Service Agreements, because MMIC is providing a defense to Howard's Towing (subject to a reservation of rights) in a lawsuit, i.e. the *Waldron* matter, where Mosites is also named as a defendant, and because the Service Agreements and the damages sought

---

[8] That provision does not explicitly require that the indemnitee be an "insured" or "additional insured" under the Policy to be entitled to a defense.

thereunder are directly at issue in this litigation,[9] the Court finds that Mosites sets forth a non-conclusory, non-speculative interest in this litigation. Specifically, Mosites has an interest in attempting to establish that it is entitled to a defense from MMIC under the provision of the Policy that provides for a defense of an indemnitee of Howard's Towing. As the issue of whether the Service Agreements entered into between Howard's Towing and Mosites are "insured contracts" is a central issue in this litigation, the Court is not inclined to resolve it at this time, especially where: (1) the only argument raised by MMIC with respect to this issue is by way of a relatively short footnote; and (2) Howard's Towing has not yet had a chance to speak to the issue. Further, in challenging Mosites' assertion that its indemnitee status entitles it to intervention in this matter, MMIC relies almost entirely on its argument that Mosites is not an "additional insured" under the Policy and that Mosites thus cannot rely on the "insured contract" exception to the "contractual liability" exclusion, and does not materially address the provision of the Policy providing for a defense for an indemnitee. Accordingly, the Court is also not inclined to address, or deny the Motion to Intervene on the basis of, any potential failure to meet each of the numerous requirements of that provision at this time. The Court's decision to grant Mosites' Motion to Intervene is without prejudice to such issues being addressed at a later date, if warranted.

The Court finds that the Motion to Intervene is timely, that Mosites has an interest in this litigation in that it may be entitled to a defense under the express terms of the Policy as Howard's Towing's indemnitee, that this litigation clearly poses a threat to that interest as the "insured contract" issue will be resolved by way of this litigation, and that no other party adequately

---

[9] *See* Compl. ¶ 85, ECF No. 1 (averring that "the contractual indemnity cross-claims asserted against Howard's [Towing] are excluded from coverage pursuant to the 'Contractual' Exclusion in the Garage Form and the 'Contractual Liability' Exclusion in the CGL Form, *as the contractual indemnity provisions set forth in the Mosites Service Agreements do not expressly assume liability in clear and unambiguous terms for third-party negligence and, therefore, do not constitute an 'insured contract' within the 'insured contract' exceptions to the 'Contractual' and 'Contractual Liability' Exclusions.*" (emphasis added)).

represents Mosites' interest in the instant litigation.  The Court finds that Mosites sets forth a sufficient interest in this litigation, consistent with the Court's analysis above, and will thus grant Mosites' Motion to Intervene.[10]

### IV.   Conclusion

For the reasons discussed above, the Court will grant Mosites' Motion to Intervene.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: August 31, 2021

cc: All counsel of record

---

[10] Because the Court will grant Mosites' Motion to Intervene consistent with its analysis in this Memorandum Opinion, the Court declines to consider Mosites' assertion, in a single sentence and with no substantive explanation, that it is an indispensable party to this action and must be joined under Fed. R. Civ. P. 19(a).